IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR351 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | SENTENCING MEMORANDUM |
| LUKE ST. CYR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This memorandum supplements findings made on the record at defendant's sentencing hearing on April 8, 2009. The court finds that the defendant should be sentenced to a term of incarceration of seventy-two months on counts I & II, to be served concurrently.

**I.  BACKGROUND**

Defendant was charged with burglary and assault with a deadly instrument. Filing No. 1. The burglary charge carries a statutory sentencing maximum of 20 years. 18 U.S.C. 1153 & Neb. Rev. Stat. § 28-507. The statutory maximum for the assault charge is ten years. 18 U.S.C. 1153 and 113(a)(3). The defendant entered a plea of guilty to both counts. Filing No. 56, Petition to Enter a Plea of Guilty. The court accepted the defendant's plea but withheld entry of judgment pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office"). Filing No. 54, text order.

The following facts are gleaned from the PSR. *See* Filing No. 84. The Probation Office related that the burglary offense involved breaking into a bar and stealing several bottles of liquor. Deputy Sheriff Cole of the Thurston County Sheriff's Office encountered

the defendant and his brother after they exited the bar. The defendant and his brother then assaulted the officer, beating him on the head, hands, neck, and torso with the stolen liquor bottles. Deputy Cole estimated that six bottles were broken over his head, and he could not estimate how many times that he was kicked and punched. He stated that the assailants also struck and lacerated his hand with broken beer bottles in an attempt to get his gun. Deputy Cole suffered lacerations to the head, back, hands, and elbows and received 40 stitches.

The defendant has previous convictions for possession of marijuana, disorderly conduct, minor in possession of alcohol, attempt of a class 1C/1D/2 felony (amended from robbery), theft, contributing to the delinquency of a minor, and third-degree assault, resulting in the assessment of 8 criminal history points. The defendant was assessed two additional criminal history points for committing the offense less than two years after release for imprisonment on another sentence. The defendant's total of 10 criminal history points places him in criminal history category V.

The defendant is twenty-four years old and is a lifelong resident of Winnebago, Nebraska. He graduated from Winnebago High School in 2003. He stated that he is dyslexic and was enrolled in special education classes. Pursuant to a court order, he has received anger management treatment in the past. He reported that he began using alcohol at age 14, usually drank alcohol to excess and commented that most of his problems are related to his alcohol abuse. He has been seasonally employed as a firefighter by the Winnebago tribe and has also worked at a meatpacking plant and as a temporary laborer. The defendant has been diagnosed as having alcohol dependence with physiological dependence.

The Probation Office calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines"), applying the grouping rules for multiple counts. U.S.S.G. §§ 3D1.1(a)(3), 3D1.4. It determined that the base offense level for assault was 14 under U.S.S.G. § 2A2.2(a). It added a victim-related adjustment of four levels for use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(b) and a three level adjustment for assault resulting in bodily injury under U.S.S.G. § 2A2.2(b)(3)(A). It also added a six-level increase for creating a serious risk of bodily injury for the defendant's attempt to get the deputy sheriff's gun under U.S.S.G. § 3A1.2(c)(1), resulting in an adjusted offense level of 27 for the assault charge. With respect to the burglary count, the Probation Office determined that the base offense level was 12 for burglary of a business under U.S.S.G. § 2A2.1(a)(2). It added a six-level increase under U.S.S.G. § 3A1.2(c)(1) for knowingly assaulting a law enforcement officer, resulting in an offense level of 18. Under U.S.S.G. § 3D1.4, the Probation Office determined that the combined offense level for the two crimes was 27. It subtracted three levels for defendant's acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), resulting in a total offense level of 24. At offense level 24 and criminal history level V, the defendant's resulting advisory Guidelines sentencing range is 92 -115 months.

The government objected to the assessment of an adjustment of three levels under U.S.S.G. § 2A2.2(b)(3)(A), contending that a four-level assessment should apply. Filing No. 71. The court overruled the government's objection. The defendant moved for a sentence outside the guidelines and argued that a sentence of five years would be appropriate.

## II.  DISCUSSION

### A.  Law

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* 552 U.S. at —, 128 S. Ct. at 596

(stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors"). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring); *see also Spears v. United States*, — U.S. —, —, 129 S. Ct. 840, 844 (Jan. 21, 2009) (per curiam) (recognizing the district courts' authority to vary from Guidelines based on policy disagreement).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented."

*Gall,* 552 U.S. at —, 128 S. Ct. at 596-97.  "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."  *Id.,* 552 U.S. at —, 128 S. Ct. at 596.  If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  *Id.*  The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role.  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 57; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464.  When operating within that institutional role, the Sentencing Commission has a "capacity courts lack" to "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'"  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting* [United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007)](#) (McConnell, J., concurring)).

In formulating the Guidelines, the Commission developed and used data on past practices and recidivism.  *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen-Year Assessment") at 14; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  *Gall,* 552 U.S.

at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at —,128 S. Ct. at 574.

However, for policy reasons, and because statutory mandatory minima dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, child crimes, and violent offenses. Fifteen-Year Assessment at 15, 68, 72-73; *see Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (involving drug-trafficking crimes). Consequently, the Guideline ranges of imprisonment for those crimes may be a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.

The Guidelines that establish the base offense levels for aggravated assault are among those that were not based on so-called empirical data and national experience. Fifteen-Year Assessment at 47, 68, 75. The Commission, "either on its own initiative or in response to Congressional actions, established guideline ranges that were significantly more severe than past practice" for violent crimes, including aggravated assault. Fifteen-Year Assessment at 47 (noting that Guidelines ranges were set above historical levels for drug trafficking, white-collar offenses, robbery of an individual, murder, aggravated assault, immigration, and rape). Although Congress did not expressly direct the Sentencing Commission to increase sentences for violent offenders, the Sentencing Commission

acknowledges that the reason for the increased sentences was that "[w]hile not expressly directing a change in federal sentencing practices for violent offenses, the [Sentencing Reform Act] and numerous other penalty statutes display a special concern with violent crimes" and "the Commission was careful to ensure that average sentences for such [violent] crimes at least remained at current levels, and it raised them where the Commission was convinced that they were inadequate." *Id.* at 68 (stating "[f]or murder and aggravated assault, the Commission felt that past sentences were inadequate since these crimes generally involved actual, as opposed to threatened, violence.").

The Commission has also adjusted the Guidelines for assault and other violent crimes numerous times over the years pursuant to various Congressional directives. *See, e.g.,* U.S.S.G. app. C (Supp.), amends. 85, 86 (1989), 311 (1990), 534 (1995), 549 (1997), 614 (2001), 637 (2002), 663 (2004), 685 (2006), & 699 (2007). At the inception of the Federal Sentencing Guidelines, the crime of "aggravated assault" carried a base offense level of 15 under U.S.S.G. § 2A2.2. *See* United States Sentencing Commission, Guidelines Manual, § 2A2.2 (a) (Nov. 1, 1987). In 2002, the Sentencing Commission implemented sentencing directives enacted by Congress in the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("the USA PATRIOT Act") of 2001. U.S.S.G. app. C, Vol. II, amend. 637 (2002); *see* 18 U.S.C. § 2332b(a) & (c)(1)(a). A two-level enhancement for a conviction for assaulting a law enforcement or federal officer was added. *Id.*; U.S.S.G. § 2A2.2(b)(6). Also, Section 11008 of the Federal Judiciary Protection Act of 2002 increased the penalties for assaulting, resisting or impeding certain officers or employees including federal judges and magistrate judges, their families, or persons assisting in the performance of those official

duties, or offenses committed on account of those duties. See 18 U.S.C. § 111(b)(1)(a) & (b)(2)(b). The sentencing commission was directed to "ensure punishment at or near the maximum penalty for the most egregious conduct covered by the offense" for offenses against federal officers, officials and employees. *See* U.S.S.G. app. C (Supp.) 663 (2004). The Sentencing Commission also increased the adjustment for assault resulting in bodily injury by one level for each category of increasingly serious bodily injury and raised the maximum cumulative upward adjustment from 9 to 10 levels. *Id.* In response to the congressional directive, the Commission added a new specific offense characteristic in § 2A2.2 (Aggravated Assault) to provide a two-level increase if the defendant was convicted under 18 U.S.C. § 111(b) or § 115 for assaulting or hindering a federal officer. *Id.*

The 2004 amendment also restructured U.S.S.G. § 3A1.2 (Official Victim) to provide a two-tiered adjustment: maintaining the three-level adjustment for offenses motivated by the status of the official victim, but increasing the adjustment to six levels if that defendant's offense guideline was from Chapter Two, Part A (Offenses Against the Person). The Commission explains:

> For example, a threat against a federal judge sentenced pursuant to § 2A6.1 (Threatening or Harassing Communications) that is calculated at base offense level 12 could have received, before this amendment, a three-level enhancement under § 3A1.2, which would have resulted in an adjusted offense level of level 15 and a guideline range of 18 to 24 months. Under this amendment, the defendant could receive a six-level adjustment, resulting in an enhanced offense level of level 18 and a guideline range of 27 to 33 months. The six level enhancement also applies to assaultive conduct against law enforcement officers or prison officials if the defendant committed the assault in a manner creating a substantial risk of serious bodily injury. This increase comports with the directive in the Act to "ensure punishment at or near the maximum penalty for the most egregious conduct covered by the offense" for offenses against federal officers, officials and employees.

U.S.S.G. app C, Supp., amend. 663 (2004).

"[B]ased upon information received from the Native American Advisory Group and studies indicating that federal aggravated assault sentences generally are more severe than many state aggravated assault sentences," the Sentencing Commission also decreased the base offense level from level 15 to level 14. *See* U.S.S.G. app. C (Supp.) 663 (2004). However, in an effort to ensure that "individuals who cause bodily injury to victims do not benefit from this decrease in the base offense level, the specific offense characteristics addressing degrees of bodily injury each were increased by one level." *Id.*

Due to the unique nature of federal jurisdiction over violent crimes by or against Native Americans that occur on Indian land, "a sizeable proportion of murder, assault, and especially manslaughter cases in federal court involve Native American defendants." Fifteen-Year Assessment, Executive Summary at ix. By virtue of this special federal jurisdiction, Native Americans are subject to federal prosecution for many offenses that are prosecuted in the state courts when committed by other groups. *Id.* at 114. This jurisdictional framework "places more Native American offenders in federal court, and, when coupled with the longer federal sentences, it results in a disparate impact on Native Americans." United States Sentencing Commission, Report of the Native American Advisory Group at 28-29 (Nov. 4, 2003), accessed at http://www.ussc.gov/research.htm (noting also that the PROTECT Act further increases the impact of federal sentences on Native Americans). The Sentencing Commission decreased the base offense level for assault from level 15 to level 14, "based upon information received from the Native American Advisory Group and studies indicating that federal aggravated assault sentences generally are more severe than many state aggravated assault sentences." *Id.* In an effort

to ensure that "individuals who cause bodily injury to victims do not benefit from this decrease in the base offense level, the specific offense characteristics addressing degrees of bodily injury each were increased by one level." *Id.* Federal courts recognize the unique sentencing considerations that are present in the prosecutions of Native Americans arising under the Major Crimes Act. *Id.* at 16; *United States v. Big Crow,* 898 F.2d 1326, 1332-33 (8th Cir. 1990) (holding, pre-*Booker*, that adverse environment of reservation life can be considered as a mitigating circumstance justifying a downward departure under the Guidelines).

### B. ANALYSIS

#### 1. Initial Guidelines Calculation

The court adopts the findings in the PSR and finds that defendant's base offense level under the Guidelines is 24, his criminal history category is V and his sentencing range of imprisonment is 92 to 115 months.

#### 2. Departure

The court finds no reason to depart from the Guidelines. As discussed below, the court will grant a § 3553(a) variance. Accordingly, the court finds no extended discussion of a departure is necessary.

#### 3. 18 U.S.C. § 3553(a) Factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of seventy-two months is sufficient, but not greater than necessary to accomplish the goals of sentencing. In consideration of the nature and circumstances of the offense, the court notes that assault is a serious crime and this was a brutal and violent assault. However, the court must recognize the distinctions between a broken

bottle as a weapon and a gun or a knife. Without trivializing the harm that a broken bottle can inflict, the court notes there is a qualitative distinction between the weapons. The court must further recognize the distinctions between bodily injury and serious bodily injury. The injury inflicted in this case does not place this crime in the category of the "most egregious conduct covered by the offense." The court is mindful that an assault on an officer is a more serious offense than an ordinary assault and that fact is reflected in the enhancements applicable to the offense. However, the operation of several seemingly overlapping Guidelines enhancements overstated the nature and circumstances of the crime.

The court has also considered the history and characteristics of the defendant. The defendant has a serious alcohol dependency and the crime occurred under circumstances of excessive drinking. The defendant's history of alcohol abuse operates to mitigate his culpability to some degree. The defendant was abused as a child and his mother is a recovering alcoholic. He has been diagnosed as an alcoholic and acknowledges that alcohol is the source of most of his problems. In connection with this analysis, the court also considers the adverse impact of Native American life on a reservation.

The defendant has expressed remorse for his actions and has demonstrated a sincere desire to address his alcohol abuse issues. The court finds it significant that the defendant turned himself into authorities when he found out they were looking for him. Also, the defendant admitted that his level of culpability was greater than that of his co-defendants. At the same time, the court recognizes that the defendant has a significant history of violent behavior, and finds that a substantial period of incarceration is warranted.

The court has also considered the Sentencing Guidelines as a factor in the Section 3553 analysis. Because the Guidelines for aggravated assault were developed within the confines of the Sentencing Commission's unique empirically-grounded area of expertise, they are a less reliable appraisal of a similar sentence in a similar court of general jurisdiction. Thus, the court affords them less deference than it would to the Commission's previous empirically-grounded Guidelines. The Sentencing Commission departed from previous empirical data on past practices in setting the original base offense levels for violent crimes and set higher base offense levels for those crimes, not in response to any explicit instruction from Congress, but to address its feeling that past sentences for violent crimes were inadequate. The base offense levels for these crimes were later substantially increased in response to concerns about terrorism, gun violence and assaults on the judiciary, circumstances that have little to do with this crime. The combination of the grouping rules and several enhancements resulted in a Guidelines sentencing range that overstated the severity of the crime. Also, the court cannot disregard the Sentencing Commission's own admission that the Guidelines have a disparate impact on Native Americans. The result of the Sentencing Commission's focus on increasing sentences for violent crimes is that the harsh punishment for such crimes falls only on Native Americans, since they are generally the only offenders sentenced in federal court for murder, manslaughter or assault.

In connection with the need to avoid unwarranted sentencing disparities, the court notes that these crimes, if committed by a non-Native American outside a reservation, are prosecuted in state court. The court acknowledges the Sentencing Commission's finding that the Sentencing Guidelines result in longer sentences for Native Americans than they

would otherwise receive. There is no way to compare sentences for non-Native Americans who commit these crimes without reference to state court sentences. The court finds no principled reason to subject this defendant to a substantially longer sentence than his state court non-Native American counterpart would serve. Although state court sentences would not ordinarily be considered in connection with federal court sentencing, such consideration is necessary when it is the only basis on which to assess the sentencing goal of avoiding disparity. Although there are arguably situations in which the disparate impact on a group of defendants could be justified by legitimate sentencing goals that target the shared characteristics that define the group, such as recidivists, it is hard to imagine that any legitimate sentencing purpose would justify the imposition of significantly higher sentences on Native Americans by reason of their status as Native Americans.

     The court finds that a sentence of seventy-two months satisfies the general purposes of sentencing, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The length of the defendant's sentence will afford adequate deterrence to criminal conduct of this nature. Arguably, there is a need to protect the public from the defendant's violent tendencies, but because the defendant's violence is closely linked to his alcohol abuse, the court's imposition of a three-year period of supervised release and stringent conditions of supervision, including drug and alcohol treatment, will better serve to protect the public than a longer sentence would. This sentence also fulfills the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner by allowing him to receive drug and alcohol abuse treatment while incarcerated.

### III.  CONCLUSION

The court finds that to sentence this defendant to the recommended Guidelines sentence of ninety-two months would violate the Sentencing Reform Act's overarching instruction that the court impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing.  For the reasons stated above, the court finds Luke St. Cyr should be sentenced to seventy-two months' incarceration.  A Judgment of Conviction in conformity with this Sentencing Memorandum will issue this date.

DATED this 18th day of May, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge